IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

_____
                                )
UNITED STATES OF AMERICA,        )
                                 )
                                 )   DOCKET NO. 3:14-CR-232
            vs.                  )
                                 )
TONY LEE DRUM,                   )
                                 )
            Defendant.           )
_____ )


TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE MAX O. COGBURN, JR.
UNITED STATES DISTRICT COURT JUDGE
TUESDAY, JULY 14, 2015 AT 11:40 A.M.


APPEARANCES:

On Behalf of the Government:

        KIMLANI MURRAY FORD, ASSISTANT U.S. ATTORNEY
        U.S. Attorney's Office
        227 W. Trade Street, Suite 1650
        Charlotte, North Carolina  28202


On Behalf of the Defendant:

        RANDOLPH MARSHALL LEE, ESQ.
        Law Offices of Randolph Marshall Lee
        P.O. Box 77005
        Charlotte, North Carolina  28271


        JILLIAN M. TURNER, RMR, CRR, CLR
        Official Court Reporter
        United States District Court
        Charlotte, North Carolina

1   (Tuesday, July 14, 2015 at 11:45  a.m.)

2                    P R O C E E D I N G S

3            (Counsel and defendant present.)

4            THE COURT:  Okay.  Call the case of United States v.

5   Tony Lee Drum.

6            Is the defendant ready?

7            MR. LEE:  Good morning.

8            THE COURT:  Is the Government ready?

9            MS. FORD:  Yes, sir.

10           THE COURT:  All right.

11           Mr. Drum, do you recall appearing before United

12  States Magistrate Judge for the purpose of entering a plea of

13  guilty in this case?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Do you remember being placed under oath

16  at that time?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  Do you remember answering the questions

19  of the judge?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  Do you remember signing a plea

22  transcript form indicating your answers were true and correct

23  at the time they were given?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  Did you tell the judge the truth that

1  day?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  If I were to ask you the same questions

4  today, would your answers be the same?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Thank you.  Counsel, do you believe your

7  client understood fully the questions the magistrate judge

8  asked at the Rule 11 hearing?

9          MR. LEE:  Yes, sir, I do.

10         THE COURT:  All right.  Thank you.

11         Mr. Drum, did you answer the questions the way you

12  did, and are you going forward with your guilty plea today

13  because you did commit the crime you're pleading guilty to?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  All right.  And based upon those

16  representations and the answers given by the defendant at

17  Rule 11 hearing before the magistrate judge, the Court affirms

18  the judge's finding that the defendant's plea was knowingly

19  and voluntarily made.  The Court also affirms the judge's

20  finding that the defendant understood the charges, the

21  potential penalties and the consequences of his plea.

22  Accordingly, the Court affirms the magistrate judge's

23  acceptance of the defendant's plea of guilty at the Rule 11

24  hearing.

25         Would the Government have a factual basis in this

1    case?

2              MS. FORD:  The Government would rely on the facts as

3    cited in the presentence report.

4              MR. LEE:  And we so stipulate, Your Honor.

5              THE COURT:  Thank you.  Based upon that stipulation

6    and the offense conduct as set forth in the presentence

7    report, the defendant's plea of guilty before the magistrate

8    judge and the defendant's admissions in open court today, the

9    Court finds there is a factual basis for the entry of the plea

10   of guilty and enters a verdict and judgment of guilty in this

11   case.

12             Now, Mr. Drum, your case was referred to the United

13   States Probation Office for a presentence investigation and

14   the preparation of a presentence investigation report.  The

15   Court has now received that report.

16             Have you read that report?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Have you gone over that report with your

19   attorney?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  Do you now believe you understand the

22   contents of that report?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  Counsel, have you gone over that report

25   with your client, and do you believe he understands the

1  contents of that report?

2  　　　　MR. LEE:  I have been over the draft report, the

3  final report and the final revised report that came out

4  yesterday afternoon.  We have been over all three.  He

5  understands it.  We've reviewed it.

6  　　　　THE COURT:  And he does understand the contents?

7  　　　　MR. LEE:  He does.

8  　　　　THE COURT:  Are there any objections to the

9  presentence report that remain outstanding today?

10  　　　　MR. LEE:  Well, the Government conceded some of the

11  objections yesterday afternoon.  I filed objections whenever

12  it was, several months ago.  I have not talked to Mr. Drum

13  about maintaining those objections.  I think the better course

14  may be for the Court just to overrule those objections for the

15  record today and move forward.

16  　　　　THE COURT:  Well, let me look at those.  If you're

17  going to abandon them, I certainly will.  If the defendant

18  wants to go forward with those, then I rather go over them an

19  make a decision on each one individually.

20  　　　　MR. LEE:  If we may have just a moment, Your Honor.

21  　　　　THE COURT:  All right.

22  　　　　(Counsel and defendant conferred off the record.)

23  　　　　MR. LEE:  Your Honor, I have conferred with

24  Mr. Drum.  We will abandon those other objections which remain

25  outstanding.

1    THE COURT:  Okay.

2    MR. LEE:  I will tell the Court the parties have

3 been involved in intensive negotiations since yesterday.  The

4 parties would make a joint guideline recommendation to the

5 Court.  And with that understanding, we withdraw those

6 objections.

7    THE COURT:  All right.  Then the Court -- any

8 objections from the Government in with regard to?

9    MS. FORD:  No, sir.

10    THE COURT:  All right.  Then it would appear that in

11 the revised report, that we have a total offense level of 35

12 and a criminal history category of II, with a guideline

13 sentencing of 188 to 235 months.

14    Does the defense agree?

15    MR. LEE:  We do agree, Your Honor.

16    THE COURT:  Does the Government agree?

17    MS. FORD:  Yes, sir.

18    THE COURT:  All right.  Then based upon the

19 agreement of both sides, the Court will accept the probation's

20 guideline calculation and will then hear on sentencing with a

21 guideline sentencing range of 188 months to 235 months.

22    MR. LEE:  Thank you, sir.

23    THE COURT:  So the defendant may be seated briefly

24 while you argue.

25    MR. LEE:  Your Honor, the parties will be making a

1 recommendation jointly to the Court for a sentence at the low
2 end of 188 months.

3 Part of practicing law or advocacy is when not to
4 speak. I don't want to say too much to run the risk of
5 jeopardizing this joint recommendation.

6 I will tell the Court that Mr. Drum has been
7 thoroughly investigated backwards and forwards and sideways by
8 four investigative agencies. The U.S. Attorney's Office is
9 very familiar with the facts of this case, with Mr. Drum, with
10 the victims, and with people that I would refer to as
11 unindicted co-conspirators, and he would call on some others.

12 In considering the Court's jurisdiction under
13 3553(a) and its factors, I believe, as Mr. Drum's attorney,
14 that a sentence at the low end of 188 months meets those
15 factors.

16 Mr. Drum I'm sure would like to address the Court at
17 some point before the Court imposes sentence. But my
18 recommendation is 188 months, Your Honor.

19 THE COURT: All right, sir. What would you like to
20 say, Mr. Drum?

21 THE DEFENDANT: I'd like to apologize for my crimes
22 I've committed. I was at a low point in my life. I just lost
23 my family and I was drinking heavily every day and on drugs
24 every day, and I regret any pain that I caused the victims. I
25 truly do. I wish they were here today so they can hear my

1  apology.  I mean, normally I wouldn't do something like that.

2  I'm going to try to better myself during my incarceration and

3  come out and be a good citizen.

4          MR. LEE:  And if I could, Your Honor.  We talked

5  about what he might want to address the Court with today.  He

6  left a couple of things out.  I'd like to go ahead and fully

7  inform because he's nervous right now.

8          Mr. Drum fell into using the internet and these

9  websites and chat rooms and was fairly active in those.

10  Because of his family circumstances he's just made known to

11  the Court, he was heavily involved in these means of

12  communication.  This is not a case where Mr. Drum is riding

13  down the street in a white paneled van passing out candies to

14  kids.  I do believe that his peculiar circumstances with his

15  wife leaving him and taking their kids to Alabama left him in

16  somewhat a vulnerable state.  He made some gross mistakes of

17  judgment.  He did believe, I believe, that the victims were

18  over the age of 16.  That's still below the threshold for

19  federal purposes.

20          Life is complicated.  The facts of this case and the

21  people involved in this case were complicated.  And I mention

22  all of that as a very shorthand way of trying to communicate

23  to the Court that I don't believe that Mr. Drum is an evil

24  person.  I don't think that he's a repeat serial pedophile,

25  and here we are.

1    THE COURT:  Okay.  Anything else, Mr. Drum?

2    THE DEFENDANT:  No, sir.

3    THE COURT:  Let me hear from the Government.

4    MS. FORD:  Your Honor, the Government joins in the

5    recommendation and is asking that Your Honor sentence Mr. Drum

6    to 188 months.  I believe that's a sentence that's sufficient,

7    but not greater than necessary, to accomplish the goals

8    enumerated in 18 U.S.C. 3553.

9    Your Honor, Mr. Drum pled straight up and didn't

10   waive his right to appeal, so I do need to put some things on

11   the record should the sentence be reviewed at the appellate

12   level.

13   Your Honor, I think this offense really comes down

14   to two things:  Greed and laziness.

15   I think Mr. Drum living with the co-conspirators

16   that his lawyer mentioned saw what was going on with them, saw

17   that two of them were involved in a impromptu relationship and

18   thought, hey, that might be an easy way to make some money.

19   So -- and at the same time, he was going into these chat rooms

20   and on social media what I would call "fishing for girls."

21   Throwing out some lines and catching girls here and there.

22   And one of the girls that he was talking to was a 16 year old

23   down in South Carolina, and she had her own issues going on.

24   That's why there was a vulnerable victim enhancement applied

25   in her case.

She was unhappy at home. She wasn't doing good in school. In fact, she had gotten kicked out and she wanted to leave home. She met him. He agreed to bring her back to North Carolina. And, Your Honor, he pled guilty to the transporting her to come up here to prostitute and also sex trafficking a minor. He knew before he went to South Carolina to pick her up that she was 16, that she would be coming back to North Carolina to prostitute and that she was vulnerable. She may have wanted to come with him, but I don't think consent really has anything to do with the offense.

She did come back here. She worked as a prostitute for him. He would say and he has said that he wasn't her pimp, but I would argue, Your Honor, that everything he did showed that he was actually her pimp. He drove her to "work." And I use the term "work" loosely. He drove her to see clients. He provided her with a phone. He would watch her on occasion to make sure she was safe but also, you know, make sure she was working I would argue. And eventually he had control over the money. The money that she made was used to support them, and that's why I say greed is one of the factors because he wasn't working and he needed money to pay for the hotel room he was living in, to pay for food, to pay for beer, pay for drugs, to pay for his rental car. And all that money came in part -- or that money came in part from the girl from South Carolina.

1    Well, and there were -- there was a time, I believe,
2    as it's supported by the exhibits that I filed yesterday,
3    there were times when she didn't want to work and he
4    encouraged her to work because they needed a place to live,
5    they needed food and she continued to work.

6    She continued to work until an alert officer saw her
7    walking down the street and said to himself that girl looks
8    out of place, she looks young, let me go talk to her.  And in
9    talking to her found out about her situation; that she was a
10   missing juvenile and that she was working for the defendant
11   who she called her boyfriend.

12   That put into motion the prosecution side of this.
13   They took out warrants on him, but they couldn't find him.
14   And once they did find him a couple weeks later, they went
15   looking at him for at a hotel and found the second girl in his
16   car.

17   So what had happened was D.W., the girl from South
18   Carolina, was encountered by the police and obviously stopped
19   working for him.  And a couple days later he's back on social
20   media looking for another girl and he finds the other girl in
21   Tennessee.  She, too, is vulnerable.  She's been abused by her
22   parents.  She's living on the streets.  She's homeless.  She's
23   staying with crack heads when she's had the opportunity and
24   she wanted out.  So when he provided her the opportunity to
25   leave, she took advantage of it and said, yeah, I'm going to

1    go with you to North Carolina.

2           And again -- and again, before he went to pick her

3    up in Tennessee, he knew she was 16.  He knew she was coming

4    back to North Carolina to prostitute, and he knew she was

5    vulnerable.  He knew her circumstances.

6           Unfortunately for him, when she got back to North

7    Carolina she decided she didn't want to prostitute and she

8    didn't do it.  She refused to do it.

9           So for a third time he starts looking for another

10   girl.  This one by the name of Candace.  I don't know if

11   that's her true name.  And that was Exhibit 4 shows some of

12   the texts between him and Candace where he called himself a

13   pimp and talks about her working.

14          So I believe, Your Honor, that based on the nature

15   and circumstances of the offense and the need for the sentence

16   to reflect the seriousness of the offense, to promote respect

17   for the law, that 188 months is appropriate.

18          I want to mention two other factors.  Your sentence

19   has to afford adequate deterrence to him and others and to

20   protect the public from his actions.

21          Like I said, Your Honor, he was in the process of

22   finding a third girl, finding another girl when he was

23   arrested for the sex trafficking with D.W.  So I do believe

24   there is an element of deterrence and protection of the public

25   that needs to be addressed here.

188 months is a pretty significant sentence I would argue. A little over 15 years. And I think that, like I said before, it is one that the facts warrant. And I would ask Your Honor to impose it.

THE COURT: Let me ask this question from the Government: What is it about the case that causes the Government to recommend at the low end of the guidelines versus 235 months?

MS. FORD: I think that the base offense level and the enhancements are appropriate. I think that the offense conduct and the enhancements capture the offense conduct. There were enhancements for the girls being vulnerable. There was an enhancement for undue influence and the base offense level starts out at a 30. So I think that the guidelines truly capture the offense conduct.

There was also a multiple count adjustment because there were two girls involved. I also think that it -- he got a three-level reduction because he came in here and pled guilty.

Your Honor, I've prosecuted now four sex traffickers. He's the first one to plead guilty. I've had two trials in the last two years. And so I think the combination of the base offense level being 30, the enhancements and then the reduction, that the total offense level adequately captures the offense conduct and that low end

1    is appropriate, and that's what I have to say about that.

2              THE COURT:  Okay.

3              MS. FORD:  And one more thing I do want to say.

4    Obviously, I believe that the crime is serious, but one thing

5    that he didn't do that some other sex traffickers that I've

6    prosecuted have done is use violence.  And if that had been

7    involved -- well, his mandatory minimum would have been

8    higher, but I'm sure the guidelines would have been higher,

9    too, if he had used violence.  So that's another reason why I

10   don't think that the high end is appropriate.

11             THE COURT:  Okay.

12             Bad situation.  Very bad crime.  In looking at the

13   3553 factors, the seriousness of the offense, very, very

14   serious.  To protect the public from the other crimes of this

15   defendant, very necessary.  To keep others from committing the

16   same crime, very, very important in this case.  To promote

17   respect for the law, all of those things -- all of the 3553

18   factors that talk about the seriousness.  This is a serious

19   crime.  I mean, we get people in here who are looking at bad

20   stuff on the computer in their basement and they get --

21   there's some big guidelines on those people, and sometimes we

22   have no evidence they've ever committed a crime against

23   somebody.

24             This guy did commit a crime against these young

25   ladies.  They are minors.  Now they're older minors.  We see

1 most of these child porn cases are for much younger minors,

2 but they're still minors. The law is still there. And this

3 certainly could get a higher sentence than 188 months.

4 The Government has -- has afforded very, very strong

5 prosecutor who does not make recommendations lightly. So she

6 has analyzed this case on behalf of the United States, and she

7 believes the reasons given this case should be 188 months.

8 The Court is going to listen to that, but I could very

9 seriously on a case where I'm -- where an actual person is

10 involved in a offense like this go higher. It's not just

11 looking at pictures. He's -- for whatever reason, he's chosen

12 to violate the law and has damaged the lives of these young

13 ladies in ways that we can only guess how that would play out

14 over the rest of their lives.

15 So when I get somebody in here who has actually done

16 -- actually participated in these kind of things rather than

17 just looked at pictures, I realize that's a bad thing and

18 terrible thing and they've got to be punished for that because

19 there's a reason all this stuff is going on. When I get

20 somebody in here that's really done it, it really bothers the

21 Court.

22 And this is a very -- this is a serious sentence,

23 but it's certainly well deserved and I could have gone easily

24 gone higher. But again, Ms. Ford let me tell you is a tough

25 prosecutor right here. If she thinks this is the right

1  sentence for the people and the defense wants this, I'm going
2  to go ahead.

3          Another thing the Court considers is the ability of
4  getting pleas and the belief that when people come in and work
5  out deals that they have meaning, and I can find nothing wrong
6  with this sentence after Ms. Ford has explained this to the
7  Court.  But my first instinct would have been a higher
8  sentence.

9          So just understand that these are serious, serious
10 crimes.  But this is more -- this a more than 15-year sentence
11 for a defendant whose criminal record is not as serious as
12 some that come before the Court.

13         He had a -- he was on for a larceny case that he
14 received unsupervised probation.  Because of that, he had
15 gotten plus two, which pushed him up to level two rather than
16 level one.  So I've seen a lot more serious records than this,
17 but this is a serious crime.

18         Okay.  Anything further from the defense before I
19 pronounce sentence?

20         MR. LEE:  No, sir.

21         THE COURT:  Pursuant to the Sentencing Reform Act of
22 1984 and U.S. v. *Booker*, it is the judgment of the Court,
23 having considered the factors noted in 18 United States Code,
24 Section 3553(a), as been previously stated, that the defendant
25 Tony Lee Drum is hereby committed to the custody of the United

States Bureau of Prisons to be in a prison for a term of 188 months on each count to be served concurrently.

The Court recommends the defendant participate in any sex offender treatment program while incarcerated if eligible.

The Court calls to the attention of the custodial authorities the defendant has a history of substance abuse and recommends the defendant be allowed to participate in any available substance abuse treatment programs while incarcerated; and if eligible receive benefit of 18 United States Code, Section 3621(e)(2).

It is further ordered defendant be required to support all dependents from prison earnings while incarcerated, as outlined in the presentence report.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of life on each count, all such terms to run concurrently. Within 72 hours of release from the custody of the Bureau of Prisons, defendant shall report in person to the probation office in the district to which the defendant is released.

While on supervised release, the defendant shall not commit another federal, state or local crime, shall comply with the standard conditions that have been adopted by the Court in the Western District of North Carolina, and shall comply with the following additional conditions:

1    The defendant shall submit to with location
2 monitoring technology with GPS, for a period of 12 months and
3 comply with its requirements as directed.  The defendant shall
4 maintain a telephone at the defendant's place of residence
5 without any call forwarding, Caller ID services, call waiting,
6 dial-up computer modems, 1-800 long distance call block, fax
7 machine, voice over internet protocol, burglar alarm or
8 three-way calling service.  This is to be a clear line with
9 nothing on it.

10    Defendant is to pay for the cost of location
11 monitoring portion of this sentence not to exceed the daily
12 contractual rate.  Payment for location monitoring shall be
13 made in accordance with the probation officer's direction.
14 Changes to the established rate can be made by the probation
15 officer subject to supervisory approval.

16    The defendant shall have no direct or indirect
17 contact for any reason with the victims, the victim's family,
18 or the affected parties in this matter unless provided with
19 specific written authorization to do so in advance by the
20 United States probation officer.

21    The defendant shall submit to a psycho-sexual
22 evaluation by a qualified mental health professional
23 experienced in evaluating and managing sexual offenders as
24 approved by the U.S. probation officer.  The defendant shall
25 complete the treatment recommendations and abide by all of the

rules, requirements and conditions of the program until discharged. Defendant shall take all medications as prescribed.

Defendant shall submit to risk assessments, psychological and physiological testing, which may include, which is not limited to, a polygraph examination and/or Computer Voice Stress Analyzer, or other specific tests to monitor the defendant's compliance with supervised release and treatment conditions at the direction of the U.S. probation officer.

Defendant's residence and employment shall be approved by the U.S. probation officer. Any proposed change in residence or employment must be provided to the United States probation officer at least 10 days prior to the change and pre-approved before the change may take place.

The defendant shall not possess any materials depicting and/or describing child pornography and/or simulated child pornography as defined in 18 United States Code Section 2256, nor shall the defendant enter any location where such materials can be accessed, obtained or viewed, including pictures, photographs, books, writings, drawings, videos, or video games.

The defendant shall comply with the requirements of the Sex Offender Registration Notification Act, 42 United States Code, Section 16901 and those that follow, as directed

by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which the defendant resides, works, is a student, or was convicted of a qualifying offense.

Defendant shall not associate or have verbal, written, telephonic, or electronic communications with any person under the age of 18 except: In the presence of the parent or legal guardian of said minor; on the condition that the defendant notifies the parent or legal guardian of their conviction or prior history; and has written approval from the U.S. probation officer. This provision does not encompass persons under the age of 18, such as waiters, cashiers, ticket vendors, et cetera, with whom the defendant must deal with in order to obtain ordinary and commercial services.

Defendant shall not loiter within 100 feet of any parks, school property, playgrounds, arcades, amusement parks, daycare centers, swimming pools, community recreation fields, zoos, youth centers, video arcades, carnivals, circuses or other places primarily used or can reasonably be expected to be used by children under the age of 18, without prior written permission of the United States probation officer.

Defendant shall not purchase, possess, or control cameras, camcorders, or movie cameras without prior approval of the U.S. Probation Office.

Defendant shall not use, purchase, possess or

procure, or otherwise obtain any computer or electronic device that can be linked to any computer networks, bulletin boards, internet, internet service providers, or exchange formats involving computers unless approved by the U.S. probation officer. Such computers, computer hardware or software is subject to warrantless searches and/or seizures by the U.S. Probation Office.

And that's certainly going to be left up to the U.S. Probation Office to determine. It's very difficult in this world not to have a computer, but that's the way people are reaching each other. This is not unusual. You mentioned it's not passing out candy in the park. People don't do that anymore. They go on the internet where all these kids have computers and they lure them. I mean, everything is being done by computer. Everybody is dating by computer. Swipe left to right to get a date. You know, people aren't going out the traditional ways anymore and they're not looking for trouble in traditional ways. It's all being done by computer. So he's going to wind up -- if he's got a computer, then he's going to be -- he's going to be watched.

Therefore, the defendant shall not use or have installed any programs specifically and solely designed to encrypt data, file folders, or volumes of any media. The defendant shall, upon request, immediately provide the probation officer with any and all passwords required to

1    access data compressed or encrypted for storage by any

2    software.

3            Defendant shall provide a complete record of all

4    passwords, internet service providers, e-mail addresses,

5    e-mail accounts, screen names, et cetera, to the probation

6    officer and shall not make any changes without the prior

7    approval of the U.S. probation officer.

8            Defendant shall not use, possess, or control any

9    bootable linux or counter forensic tools.

10           Defendant shall not have any social networking

11   accounts without the approval of the U.S. probation officer.

12   So they know everything that's going on.

13           During the period of probation or supervised

14   release, the defendant shall notify all employers, family,

15   friends, and others with whom they have regular contact of the

16   defendant's conviction and/or history as a sex offender and

17   that the defendant is being supervised by a U.S. probation

18   officer.

19           This particular thing after what number of years the

20   U.S. Probation Office believes that the defendant needs to

21   have some relief and in regard to the employers, I'll leave it

22   in the option of the probation office.

23           THE PROBATION OFFICER:  Yes, sir.

24           THE COURT:  To do that at some point after the

25   defendant has been on it for a while.

1    The defendant shall not engage in any forms of
2  exhibitionism, voyeurism, obscene phone calls, or other lewd
3  or lascivious behavior, nor shall the defendant engage in any
4  form of grooming behavior that is meant to attract, seduce, or
5  reduce resistance or inhibitions of a potential victim.
6    The defendant shall not be employed in any position
7  or participate as a volunteer in any activity that involves
8  direct or indirect contact with children under the age of 18,
9  without prior written permission from the U.S. Probation
10  Office.  Under no circumstances may the defendant be engaged
11  in a position that involves being in a position of trust or
12  authority over any person under the age of 18.
13    Defendant shall not possess any legal or illegal
14  pornographic material, nor shall the defendant enter any
15  location where such material can be accessed.
16    Defendant shall not possess any illegal pornographic
17  material, nor shall defendant enter any location where those
18  can be accessed, obtained and viewed, including pictures,
19  photographs, books, writings, drawings, videos, or video
20  games.
21    In terms of any kind of legal material, it's going
22  to be up to the defendant.  He better be careful about where
23  he goes in regard to viewing any kind of material that he
24  views.  I'm not going to block him from the rest of his life.
25  I'm not going to do that.  Legal material.

1          All right.  It's further ordered defendant shall pay

2     the United States a special assessment of $400.

3          The Court finds the defendant does not have the

4     ability to pay a fine or interest.  And having considered the

5     factors noted in 18 United States Code, Section 3572(a), will

6     waive payment of a fine and interest in this case.

7          Payment of the criminal monetary penalty of $400 is

8     due and payable immediately.

9          The Court has considered the financial and other

10    information contained in the presentence report and finds that

11    the following is feasible:

12         If the defendant is unable to pay any monetary

13    penalty immediately, during the period of imprisonment

14    payments shall be made through the Federal Bureau of Prison's

15    Inmate Financial Responsibility Program.  Upon release from

16    imprisonment, any remaining balance shall be paid in monthly

17    installments of not less than $50 to commence within 60 days

18    until paid in full.  However, after a long incarceration and

19    the restrictions for employment placed on this defendant, that

20    can be modified if the defendant is unable to obtain

21    employment in 60 days.

22         THE PROBATION OFFICER:  Yes.

23         THE COURT:  So throughout the period of supervision

24    the probation officer shall monitor the defendant's economic

25    circumstances and shall report to the Court, with

1  recommendations as warranted, any material changes that affect

2  the defendant's ability to pay any court ordered penalties.

3         This is a severe sentence, but it is necessary in

4  this case because of the active involvement of the defendant

5  with minors.

6         Is there any legal reason why this should not be the

7  sentence in this case?

8         MR. LEE:  Can I have just a moment, Your Honor?

9         THE COURT:  You may.

10        (Counsel and defendant conferred off the record.)

11        MS. FORD:  No, sir.  But I do want to make sure that

12 I'm able to address victim notification and restitution at the

13 appropriate time.

14        THE COURT:  Yes, please do.

15        MS. FORD:  The U.S. Attorney's Office has and

16 Special Agent Harrison have been in contact with both victims

17 and/or their guardians.  Neither victim nor their guardians

18 wish to be here today.  One did submit a victim impact

19 statement, which I filed and I'm sure Your Honor has reviewed

20 that.

21        THE COURT:  I did.

22        MS. FORD:  With regard to restitution, D.W., the

23 victim in South Carolina, neither she nor her guardian wanted

24 to submit any claim for restitution.

25        As for the other victim, at first the agency that's

1  been helping her was interested in trying to make a claim for
2  restitution, but they've never provided me, despite like
3  overtures, any figure or any receipts to support the figure.
4  So the Government is not asking for any restitution in this
5  case.
6          One other thing I'll say about victim -- the victim
7  D.W. in SC.  She received -- well, her guardian intercepted a
8  letter written to her from the defendant.  I think it was
9  about a month ago.  And neither she nor her guardians want
10  anything to do with the defendant anymore.  They've chosen not
11  to be here today --
12          THE COURT:  It's clearly a part of this sentence
13  he's to have no contact.
14          MS. FORD:  I heard Your Honor say that.  I do want
15  to make sure that he realizes that he could be eligible for
16  good time in the BOP; and that it's possible that if he
17  attempts to contact the victims, that his good time will be at
18  risk.  So I just ask that he not contact the victims.
19          THE COURT:  Yeah, you'll be eligible -- this
20  sentence, roughly you'll be eligible for over two years of
21  good time, almost two and a half years of good time on this
22  sentence, not quite.  Probably -- probably two years and --
23  probably 2.25 years, somewhere around there for good time.  So
24  do not be contacting these ladies.  They were children at the
25  time under the law, and they do not want contact and they're

1    not -- and this is in the judgment -- to be contacted.

2            Do you understand that, sir?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  All right.

5            Any legal reason from the defense why this should

6    not be the sentence in this case?

7            MR. LEE:  No, sir.

8            THE COURT:  All right.  That is the sentence in this

9    case.

10           Now, Mr. Drum, you have a right to appeal this

11   sentence to the Fourth Circuit Court of Appeals, this

12   conviction and sentence.  Any appeal must be done in writing

13   and must be done within 14 days from the written entry of

14   judgment in this case.

15           If you wish to appeal and cannot afford to appeal,

16   you may appeal at government expense.  The Clerk of the Court

17   would be willing to file a notice of appeal if you would so

18   request to do that.  I would ask that you speak with very able

19   counsel about your appellate rights and whether in this

20   circumstance you wish to exercise those rights.

21           However, do you understand your right to appeal as

22   I've just explained it to you?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  All right.  Anything further from the

25   defense?

1          MR. LEE:  No, sir.

2          THE COURT:  Anything further from the Government?

3          MS. FORD:  No, sir.

4          THE COURT:  This matter is concluded.  Thank you.

5          (The proceedings were recessed at 12:00 p.m.)

6                          *    *    *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

CERTIFICATE OF OFFICIAL REPORTER

I, Jillian M. Turner, RMR, CRR, CLR, Federal Official Court Reporter, in and for the United States District Court for the Western District of North Carolina, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this the 5th day of October 2015.


/s/ Jillian M. Turner
Jillian M. Turner, RMR, CRR, CLR
U.S. Official Court Reporter